E-FILED
Friday, 20 November, 2026 04:58:08 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**URBANA DIVISION**

| | | |
|---|---|---|
| **TRENT ALLYN BOYER,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 26-cv-2353** |
| | ) | |
| **BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS; ROBERT WILCZYNSKI, Director, Office for Student Conflict Resolution; ALEXANDER J. VICKERY-HOLLAND, Assistant Dean of Students, Office for Student Conflict Resolution; MONI MARCELO, Director, Office of Threat Assessment; HEATHER STOUT, Director, Division of Disability Resources and Educational Services; FRANCISCO J. RODRIGUEZ, Director, ILLINOIS SCHOOL OF ARCHITECTURE; YUN KYU YI, Instructor of Record, ARCH 573,** | ) | |
| **Defendants.** | ) | |

**OPINION**

**COLLEEN R. LAWLESS, United States District Judge:**

Plaintiff Trent Allyn Boyer, a graduate student at the University of Illinois Urbana-Champaign, filed a four-count Complaint asserting various claims under Title II of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act, and 42 U.S.C. § 1983. (Doc. 1). Before the Court are Plaintiff's Emergency Motion for a Temporary

Restraining Order and Preliminary Injunction and Plaintiff's Emergency Motion for a Temporary Restraining Order Preserving the Status Quo.[1] (Docs. 42, 45).

## I. BACKGROUND

On November 5, 2026, Plaintiff filed his Complaint and Emergency Motion for Injunctive Relief. In Count I of the Complaint, Plaintiff asserts a failure to accommodate claim under Title II of the ADA against Defendants Board of Trustees of the University of Illinois ("the Board"); Heather Stout, Director of the Division of Disability Resources and Educational Services; Francisco J. Rodriguez-Suarez, Director of the Illinois School of Architecture; and Yun Kyu Yi, Instructor of Record for ARCH 573, a graduate architecture studio, in which Plaintiff is enrolled. In Count II, Plaintiff asserts the Board denied him the benefits of its program solely due to his disability by refusing reasonable accommodations, in violation of Section 504 of the Rehabilitation Act. In Count III, Plaintiff alleges the Board and Defendants Moni Marcelo, Director of the Office of Threat Assessment; Robert Wilczynski, Director of the Office for Student Conflict Resolution; and Alexander J. Vickery-Holland, Assistant Dean of Students in OSCR, retaliated and interfered with his rights under the ADA by subjecting Plaintiff to a compelled Threat Assessment meeting, a disciplinary referral and charge, and continued prosecution after he requested accommodations and filed complaints with federal and state agencies. In

[1] Because Defendants have received notice and responded to Plaintiff's motions, the Court will construe Plaintiff's filings as a request for a preliminary injunction. *See* Fed. R. Civ. P. 65(a); *Sampson v. Murray*, 415 U.S. 61, 86-88 (1974).

Count IV, Plaintiff alleges Defendants Marcelo, Wilczynski, Vickery-Holland, and Rodriguez-Suarez retaliated against him for exercising his First Amendment rights. (*Id.*)

Plaintiff alleges he is a graduate student in the dual Master of Architecture and Master of Science in Structures program at the University of Illinois Urbana-Champaign ("the University") and a U.S. Coast Guard veteran with service-connected disabilities, including post-traumatic stress disorder, anxiety disorder, and a history of panic attacks. (Doc. 1 at 1-2). He is the founder and president of United Architecture & Engineering Students, a registered student organization at the University. (*Id.* at 2). Plaintiff states the University is aware he is a qualified individual with a disability. (*Id.* at 2-3).

On September 16, 2016, the Office of Threat Assessment informed Plaintiff that it received a report that "included your name in connection with a concerning situation" and scheduled an in-person meeting. (*Id.* at 3-4). While Plaintiff requested to participate in the meeting by writing as an accommodation for his service-connected anxiety disorder, Plaintiff was informed that attendance was required. (*Id.* at 4). On October 8, 2026, Plaintiff was referred to the Office for Student Conflict Resolution ("OSCR") because he was "unwilling to comply with our request." (*Id.*) On October 29, 2026, Wilczynski denied Plaintiff's request to stay the proceeding while his accommodation requests and agency complaints were pending. (*Id.* at 5). On November 2, 2026, Plaintiff answered OSCR's questions in writing as he was permitted to do. (*Id.*)

Plaintiff requested that the Division of Disability Resources and Educational Services permit a licensed medical support person and recording for any OSCR proceeding. On November 3, 2026, Plaintiff was informed he was granted the following

accommodations: 1) a non-participatory advisor, who may be a medical professional; 2) review of notes and transcripts of the hearing without the ability to download them; and 3) communication in writing. (*Id.* at 6). Plaintiff's "request to supply information in writing in lieu of meeting with the committee" was denied and Plaintiff was informed that "a decision not to engage in the OSCR process could have very broad ranging consequences." (*Id.*) Plaintiff contends the University's letter did not address all of his accommodation requests, and he did not receive a notice of a hearing date from OSCR.

Plaintiff requests entry of a preliminary injunction or temporary restraining order with the following relief: (1) Defendants Wilczynski and Vickery-Holland make no finding and impose no sanction in the OSCR proceeding; (2) Defendants Yi, Rodriguez-Suarez, and Stout permit Plaintiff to complete the graded components associated with the required South Korea travel in the ARCH 573 course, including the final presentation to the affiliated faculty and students by live video in place of travel; (3) Defendants Yi, Rodriguez-Suarez, and Stout permit Plaintiff to participate in ARCH 573 sessions and reviews by remote, synchronous video, and as part of that modification, provide written criteria for each remaining graded deliverable; and (4) Defendants impose no grade, attendance, or academic penalty on Plaintiff for participating remotely or not traveling, and take no disciplinary action or academic action affecting his grades because of his accommodation requests or his complaints to federal and state agencies. (Doc. 2 at 1-2).

Subsequently, Plaintiff was informed that a formal hearing before OSCR was set for November 13, 2026. (Doc. 23 at 1). Plaintiff requested expedited consideration of his request for injunctive relief because the hearing could result in his dismissal from the

University. (*Id.*) The Court denied Plaintiff's request for expedited consideration or an order directing Defendants to postpone the hearing on the basis that Plaintiff cannot show irreparable harm or a likelihood of success on the merits. (Text Order of Nov. 13). Plaintiff was dismissed from the University and has until November 23, 2026, at 5:00 p.m., to appeal the decision.

## II. DISCUSSION

To obtain preliminary injunctive relief, a plaintiff must show that (1) its underlying case has some likelihood of success on the merits, (2) no adequate remedy at law exists, and (3) it will suffer irreparable harm without the injunction. *Woods v. Buss*, 496 F.3d 620, 622 (7th Cir. 2007). If those three factors are shown, the court then must balance the harm to each party and to the public interest from granting or denying the injunction. *Id.*; *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013); *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999). Under the sliding scale approach, the greater the plaintiff's likelihood of success on the merits, the less the balance of harms needs to weigh in his favor in order to obtain an injunction. *Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 12 n.3 (7th Cir. 1992). If the balance of harms weighs more heavily in plaintiff's favor, the likelihood of success need not be as great. *Id.* Courts "do not accept [a plaintiff's] allegations as true, nor . . . give him the benefit of all reasonable inferences in his favor." *Doe v. Univ. of S. Ind.*, 43 F.4th 784, 791 (7th Cir. 2022).

Defendant Moni Marcelo submitted a declaration attesting to the circumstances of the events in question. As Director of the University's Office of Threat Assessment, Marcelo is tasked with coordinating the University's efforts to evaluate and respond to

reports of potential concerning, dangerous, or threatening behavior by members of the University community. (Doc. 35-1, ¶ 1). The Threat Assessment Team receives and evaluates "reports of concerning and threatening behaviors that have the potential to lead to violence." (*Id.* at ¶ 2). University policy requires all University students to "cooperate with requests from the TAT, as directed, in connection with its violence prevention and response missions." (*Id.* at ¶ 4). On August 27, 2026, the Office of Threat Assessment received a report via email from a Utah State University police department officer concerning Plaintiff's behavior toward a Utah State faculty member and her husband. The report stated:

> A Utah State University professor received a package from a Trent Boyer containing 30+ pages of screenshots, emails, etc. of a "forensic audit" he was doing on the professor's husband. The behavior is odd and appears that Trent has developed some sort of fixation on these individuals. I work for the Utah State University Police Department as well as the Threat Assessment and Management Coordinator for the University. I would appreciate a call before someone speaks with Trent.

(*Id.* at ¶ 5). Upon speaking with the Utah State police officer on September 8, 2026, Marcelo and other Threat Assessment Team members learned Plaintiff had submitted an extensive FOIA request regarding the professor's husband and asserted that the professor's husband had falsified his academic record. (*Id.* at ¶ 6). The Utah State police also reported that Plaintiff came to the professor's wedding in Las Vegas, which surprised the professor because Plaintiff was never a close friend. (*Id.*)

On September 16, 2026, Marcelo contacted Plaintiff in writing asking him to meet with Threat Assessment Team members to discuss the report. (*Id.* at ¶ 7). The meeting was scheduled for September 23, 2026. On September 18, 2026, Plaintiff notified Marcelo

by email that he would not attend the meeting with Threat Assessment Team members. (*Id.*) In order to further understand the potential safety risk, Marcelo and other Threat Assessment Team members sought information from other University personnel with whom Plaintiff had regular contact with including the School of Architecture personnel and the Equal Employment Opportunity office. (*Id.*) Individuals from those departments reported to Marcelo that after initially performing well in coursework and not being a cause for concern, Plaintiff had recently delivered a series of written complaints to various administrators and faculty that were increasingly urgent and accusatory, raised concerns without any clear basis, and indicated that Plaintiff perceived others as responsible for his own administrative mistakes. (*Id.*) This was in stark contrast with Plaintiff's prior interactions with these individuals and the escalating nature of his communications was concerning. (*Id.*)

On October 5, 2026, the Office of Threat Assessment received a second report indicating that a student was also experiencing concern over Plaintiff's communications. (*Id.* at ¶ 9). The following day, Marcelo sent a letter to Plaintiff requesting his attendance at the rescheduled meeting with the Threat Assessment Team regarding safety concerns, stating:

> Our office initially received information from an out-of-state university regarding communications that prompted concern within their community. At the time, the purpose of our outreach was to better understand the nature of those communications, gather additional context, and assess whether there were any implications for the University of Illinois community. Since that time, we have also become aware of extensive correspondence involving you and various university departments and personnel. Through those communications, you have expressed concerns regarding your treatment within your academic program and have raised

> issues related to university processes, records requests, and perceived unfairness. Taken together, the information available to us raises questions that warrant further assessment and discussion.

(*Id.* at ¶ 10). Marcelo's letter informed Plaintiff that attendance at the October 8, 2026 meeting was required. (*Id.*) After Plaintiff refused the request and declined to meet with Threat Assessment Team personnel, Marcelo informed Plaintiff on October 8, 2026, that the matter was being referred to OSCR. (*Id.* at ¶ 11).

When Plaintiff failed to appear for the November 13, 2026 OSCR hearing, the hearing proceeded in his absence and the University's Subcommittee on Graduate Student Conduct ("the panel") determined Plaintiff had violated the Student Code after refusing to attend required meetings with the Office of Threat Assessment on September 23, 2026, and October 8, 2026. The panel imposed dismissal, with the option to petition for readmission in September 2027, subject to certain conditions. The sanctions are not imposed until the November 23, 2026 appeal deadline passes or an appeal hearing is held. Plaintiff intends to file an appeal. (Doc. 49 at 7).

Plaintiff has filed several supplements to his Emergency Motion for Injunctive Relief stating he remains willing to answer the Office of Threat Assessment's questions in writing but asks the Court to preserve the status quo pending a ruling on his motion. (Doc. 45). Plaintiff requests that the Court enter a preliminary injunction before November 23, 2026 at 5:00 p.m., enjoining Defendants from implementing or enforcing any sanction arising from the November 13, 2026 OSCR hearing, including dismissal and exclusion from campus.

As the Court previously determined, Plaintiff has neither shown irreparable harm nor a likelihood of success on the merits. Plaintiff contends that irreparable harm such as reputational damage would result from a disciplinary finding. He intends to apply to law school and any disciplinary finding would be subject to disclosure while applying to law school and for bar admission. However, such potential injuries are speculative. *Doe v. Univ. of Chicago*, 2017 WL 818859, at *5 (N.D. Ill. 2017) ("To the extent that John Doe is still claiming that the University's disciplinary process threatens his reputation and his educational opportunities, these injuries are too speculative to constitute irreparable harm."). Plaintiff maintains his ability to address his concerns and pursue remedies via OSCR's appellate process. To the extent that Plaintiff has suffered any harm before the close of the appellate process, such harm was brought on by Plaintiff. *Second City Music, Inc. v. City of Chicago*, 333 F.3d 846, 850 (7th Cir. 2003) (finding "self-inflicted wounds are not irreparable injury.") Thus, Plaintiff cannot show irreparable harm.

Plaintiff also cannot show a likelihood of success on the merits. As Defendants state, "One of the highest priorities of any university is protecting the safety and well-being of its students, faculty, staff, and visitors." (Doc. 35 at 1). The Utah State University police department received a report about Plaintiff that it found concerning enough for a police officer to notify the University of Illinois officials. The University of Illinois Threat Assessment Team, which is tasked with "addressing concerning, dangerous, or threatening behavior that impacts campus," determined the report about Plaintiff warranted further inquiry. Threat Assessment Team members received other concerning reports about Plaintiff's recent escalating behavior. It was eminently reasonable for

Marcelo to find that the "information available to us raises questions that warrant further assessment and discussion," by scheduling an in-person meeting. That determination is not for this Court to second-guess. In today's world, colleges and universities have to be able to investigate behavior found to be concerning by the entity responsible for addressing such behavior.

When Plaintiff refused to attend an in-person hearing, the matter was referred to OSCR. The University's Disability Resources and Education Services granted certain accommodations to Plaintiff during the OSCR process. He was granted the ability to communicate with OSCR in writing, review notes and transcripts, and have a non-participating medical professional attend the OSCR hearing with him. His request to provide information in writing in lieu of appearing in person at the OSCR hearing was denied because the University determined it would eliminate the panel's ability to clarify submissions, ask follow-up questions, and give Plaintiff an opportunity to address evidence or issues arising during the hearing. Once again, a preliminary injunction is not the appropriate avenue for the Court to simply second-guess such decisions. The University is in a far better position than the Court is to determine how best to conduct threat assessments or investigate concerning behavior. The ADA does not require the University to approve Plaintiff's non-participation in the OSCR process as an accommodation. *See, e.g.*, *Leibas v. Dart*, 108 F.4th 1021, 1028 (7th Cir. 2024) (The ADA "does not require that the DOC compromise the safety and security of its inmate populate to provide a reasonable accommodation."). Thus, Plaintiff does not have a likelihood of success on the merits as to his failure to accommodate claim.

The same is true with respect to Plaintiff's failure to accommodate claims associated with the ARCH 573 course. Plaintiff requested remote-only participation and exemption from the Korea trip. Disability Resources and Education Services denied Plaintiff's requests because the supporting reasons for the requests were not disability related. Plaintiff sought the accommodations because he was experiencing "institutional betrayal" and had lost confidence that Professor Yi would implement his accommodations in the studio or on the trip. The Court concludes Plaintiff also has no likelihood of success on the merits because these accommodations would fundamentally alter the ARCH 573 course. "Neither the ADA nor the Rehabilitation Act requires modifications that 'would fundamentally alter the nature of the service, program, or activity.'" *P.F. by A.F. v. Taylor*, 914 F.3d 467, 472 (7th Cir. 2019); *Royan v. Chicago State Univ.*, 145 F.4th 681, 689 (7th Cir. 2025) ("Academic judgments are entitled to deference, particularly where they concern the professional standards and academic requirements of an educational program.") Thus, Plaintiff does not have a likelihood of success on his failure to accommodate claims as to the ARCH 573 course.

The academic and disciplinary decisions of universities are entitled to deference and should not be disturbed absent evidence of arbitrary and capricious conduct. *Doe v. Columbia College Chic.*, 933 F.3d 849, 858 (7th Cir. 2019); *see also Diperna v. Chic. Sch. of Prof. Pysch.*, 893 F.3d 1001, 1007 (7th Cir. 2018) (noting that "courts are reluctant to interfere with the academic affairs and regulation of student conduct in a private university setting"). The Court finds Defendants have acted in accordance with campus policy and provided rational reasons for its actions now challenged by Plaintiff (requiring an in-

person meeting with the Threat Assessment team, initiating the OSCR process and requiring appearance at a hearing, requiring adherence to the Korea travel as a fundamental requirement of ARCH 573). Because these rational judgments are entitled to judicial deference, Plaintiff cannot show he is likely to succeed on the merits as to any claim.

Even if Plaintiff were able to meet the other elements for preliminary injunctive relief, the balance of harms and public interest strongly favor the University and other Defendants. The University is statutorily obligated to evaluate threats to campus and compel implicated persons to cooperate in such efforts. *See* 29 Ill. Admin. Code 305.80(d) ("All areas of the campus community should be required to cooperate with requests from the threat assessment team relative to successfully monitoring any threatening behavior."). On a campus with approximately 60,000 students, public safety is a major undertaking. An injunction barring the University from following procedure and requiring student cooperation during the threat assessment process would place campus safety at risk and violate Illinois law. Such risks strongly outweigh any potential harm to Plaintiff.

**III. CONCLUSION**

For the reasons stated herein, each of the elements a party must establish to obtain a preliminary injunction favor Defendants, particularly when the balance of harms to each party is considered along with the public interest. The Court further finds there are no factual disputes which warrant conducting an evidentiary hearing. *See, e.g.*, *Dexia Credit Local v. Rogan*, 602 F.3d 879, 884 (7th Cir. 2010) ("[T]he court need not conduct an

evidentiary hearing unless one is called for as a result of a fact issue created by the response to a motion for a preliminary injunction."). Therefore, Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 2) and Emergency Motion for Temporary Restraining Order Preserving the Status Quo (Doc. 45) are both DENIED.

ENTER: November 20, 2026

COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE